**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PRIME ENERGY AND CHEMICAL, LLC,　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　　)　　　Civil Action No. 18-345
　　　　　　　　　　　　　　　　　　　)　　　Magistrate Judge Maureen P. Kelly
　　　　　　　v.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　　Re: ECF No. 173
TUCKER ARENSBERG, P.C., and　　　　　)
MICHAEL A. SHINER,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　　)

**MEMORANDUM OPINION AND ORDER**

**KELLY, Magistrate Judge**

　　　Presently before the Court is the "Motion to Preclude Proffered Expert Report and Testimony of Defendant's Expert Robert Wilkinson and to Order Production of Item 13 Considered in the Report" filed by Plaintiff Prime Energy and Chemical, LLC ("Plaintiff" or "Prime Energy"). ECF No. 173. For the reasons that follow, the motion will be granted in part and denied in part.[1]

**I.　　　FACTUAL BACKGROUND**

　　　Prime Energy is a Florida-based oil and gas company that entered into a contractual agreement with certain businesses operated by Mark Thompson ("Thompson"). Thompson and his businesses were clients of the law firm of Tucker Arensberg, P.C. ("Tucker Arensberg") and Michael A. Shiner ("Shiner")(collectively "Defendants"). Defendants performed legal work associated with disputed transactions that form the basis of the claims at issue in this litigation. The transactions relate to an agreement between Prime Energy and the Thompson-related entities

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case. ECF Nos. 10 and 11.

for the $3 million purchase of assets at the "Swamp Angel" oil and gas property in McKean County, Pennsylvania. In 2015 and 2016, Prime Energy engaged in a series of transactions with Thompson and his businesses in connection with this agreement. ECF No. 50. These transactions and their aftermath gave rise to this lawsuit.

## II.    PROCEDURAL HISTORY

Plaintiff initiated this action by filing a Complaint in this Court against Defendants Tucker Arensberg, Shiner, and Kenneth L. Carroll, III ("Defendant Carroll") on March 15, 2018. ECF No. 1.  Plaintiff asserts that Defendants engaged in a series of fraudulent activities and representations related to the ownership of the property, the disposition of deposit money, concealment of other litigation relating to the property, and other alleged cover-ups. Prime Energy also brings claims against Defendants grounded in recklessness, negligence, and respondeat superior liability. Id. Prime Energy alleges that it suffered significant direct and consequential damages as a result of this fraud.

On May 7, 2018, Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 15, which the Court denied on July 23, 2018, ECF No. 28. On July 26, 2018, the parties filed a Stipulation stating their agreement that "the complaint shall be amended to delete references to specific dollar amounts of unliquidated damages." ECF No. 31. Thereafter, Plaintiff filed an Amended Complaint. ECF No. 32.

Due to a substantial shortage of judges in this District, this case was reassigned to District Judge Yvette Kane (M.D. Pa.), sitting by designation, on October 23, 2018. ECF No. 48.

On October 26, 2018, Plaintiff filed a Second Amended Complaint. ECF No. 50. On November 5, 2018, Defendants filed another Motion to Dismiss, ECF No. 51, which the Court denied on August 12, 2019, ECF No. 91.

On October 4, 2019, Plaintiff filed a Motion to File Third Amended Complaint. ECF No. 104. Defendants opposed the motion. ECF No. 114. The motion was denied. ECF No. 128. As such, the Second Amended Complaint is the operative complaint.

Extensive fact discovery was conducted. During the course of fact discovery, the Court was required to address a multitude of discovery disputes.

Relevant to this instant motion, on September 13, 2021, District Judge Yvette Kane issued a scheduling order regarding attorney liability experts and expert reports. ECF No. 156. In the Order, the Court directed that any motions challenging the admissibility of expert reports pursuant to Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), be filed on or before February 20, 2022, and that all expert depositions take place on or before February 28, 2022.   Id.

The parties timely filed the required notices of experts and expert reports. ECF Nos. 159 – 164. On February 20, 2022, Defendants filed a Motion to Preclude Proffered Expert Testimony and Opinion of Plaintiff's Expert, Bennett J. Wasserman, Esquire. ECF No. 169. On February 22, 2022, Plaintiff filed Notice of Withdrawal of Attorney Wasserman as an expert witness. ECF No. 171. Accordingly, Defendants' Motion to Preclude was denied as moot. ECF No. 172.

Plaintiff filed the pending Motion to Preclude Proffered Expert Report and Testimony of Defendants' Expert Robert Wilkinson and to Order Production of "Summary Judgment" Documents Considered by Mr. Wilkinson on February 22, 2022, and a Brief in Support. ECF Nos. 173-174.[2, 3] On March 8, 2022, Defendants filed a Response in Opposition. ECF No. 175. Plaintiff

---

[2]   Because February 20, 2022, fell on a Sunday, the motions would have been due on Monday, February 21, 2022; however, that Monday was President's Day. As such, Plaintiff determined that its Daubert motion was due on Tuesday, February 22, 2022. ECF No. 176 at 2.   See Fed. R. Civ. P. 6(a)(1)(C).

[3]   Plaintiff incorrectly refers to Defendants' expert as "Robert Wilkinson" in the caption and text of the instant motion. Defendants' expert is Thomas G. Wilkinson, Jr., Esquire, as noted in the Response in Opposition. ECF No. 175 at 1, n. 2.

filed a Reply Brief and a Corrected Reply Brief. ECF Nos. 179, 196. The motion is now ripe for consideration.

On June 24, 2022, this case was reassigned back from Judge Kane, who had been sitting by designation. ECF No. 187.

## III.   DISCUSSION

### A.   Motion to Preclude Wilkinson Report and Testimony

Plaintiff seeks to preclude the report, opinion, and testimony of Defendants' expert, Thomas B. Wilkinson, Jr. Esquire ("Wilkinson"). ECF No. 174 at 5-9. Plaintiff makes five arguments in support of exclusion. First, the Wilkinson report is, in essence, an advocate's legal brief that should be excluded. Id. at 5-6. Second, Wilkinson specifically relies on Defendants' summary judgment motion papers. Id. at 7.  Third, nothing in the report could be presented to the jury as expert testimony at trial.  Id. at 7-8. Fourth, the Wilkinson report is moot because of the withdrawal of the Wasserman report. Id. at 8-9. Fifth, Wilkinson does not opine that Defendants' words and actions were in conformity with legal standards and, as such, it states no opinion on the liability issues previously identified by Judge Kane for expert opinions. Id. at 9.

In their Response in Opposition, Defendants argue that Plaintiff's Daubert motion should be denied because Plaintiff does not contest that Wilkinson and his proffered opinions meet the three requirements set forth by the United States Court of Appeals for the Third Circuit for admission of expert testimony – qualifications, reliability and fit (citing Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000)). ECF No. 175 at 1-2. Defendants also refute Plaintiff's other arguments. First, Defendants point out that Plaintiff focuses on the form of the report, rather than the admissibility of the substance of the report. Id. at 2. Second, an attorney offering expert opinion on attorney conduct must apply the facts of the case to applicable law and his opinion is not

objectionable just because it addresses the ultimate issue. Id. Third, despite Plaintiff's general allegation of impermissible legal conclusions, it fails to cite to any specific part of the opinion. Id. Fourth, Wilkinson offers affirmative opinions relative to an attorney's role and conduct vis-à-vis a non-client adverse party in a commercial oil and gas transaction. As such, it not just a rebuttal of the Wasserman opinion. Id. at 3.

In considering the instant motion, the Court begins with the law applicable to a Daubert motion.

### 1. Applicable standards for expert testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 "has a liberal policy of admissibility." Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008) (quoting Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997)). Thus, the "rejection of expert testimony is the exception and not the rule." Dorman Products, Inc. v. Paccar, Inc., 201 F. Supp. 3d 663, 686 (E.D. Pa. 2016) (quoting Fed. R. Evid. 702 advisory committee note). That said, the rule "has three major requirements: (1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." Pineda, 520 F.3d at 243

(quoting Kannankeril, 128 F.3d at 806). Under the Federal Rules of Evidence, a trial judge performs a gatekeeping function for expert testimony to "ensure that any and all scientific testimony or evidence admitted is ... reliable." Daubert, 509 U.S. at 589.

The United States Court of Appeals for the Third Circuit has further explained that Rule 702 "embodies a trilogy of restrictions" that expert testimony must meet for admissibility: qualification, reliability and fit. Schneider ex rel. Est. of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). The party offering the expert testimony has the burden of establishing each of these requirements by a preponderance of the evidence. In re TMI Litig., 193 F.3d 613, 663 (3d Cir. 1999).

### 2. Application to this case

#### a. Qualification

An expert witness's qualification stems from his or her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The witness therefore must have "specialized expertise." Schneider, 320 F.3d at 405. The Third Circuit interprets the qualification requirement "'liberally,' holding that 'a broad range of knowledge, skills, and training qualify an expert as such.'" Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994) ("Paoli II")). When evaluating an expert's qualifications, district courts should not insist on a certain kind of degree or background. Robinson v. Hartzell Propeller Inc., 326 F. Supp. 2d 631, 667 (E.D. Pa. 2004). An expert's qualifications are determined with respect to each matter addressed in the proposed testimony. Calhoun, 350 F.3d at 322 ("An expert may be generally qualified but may lack qualifications to testify outside his area of expertise."). "While the background, education, and training may provide an expert with general

knowledge to testify about general matters, more specific knowledge is required to support more specific opinions." Id.

As to qualification in this case, Wilkinson is a lawyer with over thirty years of experience as a commercial litigator and in the field of professional responsibility. He has handled many attorney professional liability and legal ethics matters. His qualifications as an expert on this subject matter are not disputed.

### b. Reliability

In Daubert, the United States Supreme Court explained that the district court's gatekeeper role requires "a preliminary assessment of whether [the] reasoning or methodology underlying the testimony is ... valid and of whether the reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592–93. While the Supreme Court noted that district courts may undertake a flexible inquiry into the admissibility of expert testimony under Rule 702, the Third Circuit has enumerated the following eight factors that a district court may examine:

1. whether a method consists of a testable hypothesis;
2. whether the method has been subjected to peer review;
3. the known or potential rate of error;
4. the existence and maintenance of standards controlling the technique's operation;
5. whether the method is generally accepted;
6. the relationship of the technique to methods which have been established to be reliable;
7. the qualifications of the expert witness testifying based on the methodology; and,
8. the non-judicial uses to which the method has been put.

Paoli II, 35 F.3d at 742 n. 8. This list of factors is a "convenient starting point," but is "neither exhaustive nor applicable in every case." Kannankeril, 128 F.3d at 806–07. Using these factors as a guide, experts are not permitted to engage in a "haphazard, intuitive inquiry," but must explain the research and methodology they employed in sufficient detail in order to allow the other party's

expert to test that hypothesis. Oddi v. Ford Motor Co., 234 F.3d 136, 156 (3d Cir. 2000). When an expert fails to use standards to control his or her analysis, "no 'gatekeeper' can assess the relationship of [the expert's] method to other methods known to be reliable and the non-judicial uses to which it has been put." Id. at 158.

"The evidentiary requirement of reliability is lower than the merits standard of correctness." Paoli II, 35 F.3d at 744. "As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." United States v. Mitchell, 365 F.3d 215, 244 (3d Cir. 2004) (quoting Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)).

Relative to the instant motion, the requirement of reliability is not in dispute.

### c.   Fit

For expert testimony to be "fit", there must be a logical relationship between the proffered testimony and the factual issues involved in the case. Paoli II, 35 F.3d at 745. The "fit" element "goes primarily to relevance." Daubert, 509 U.S. at 591. To be admissible, the expert testimony must assist the trier of fact in resolving a factual dispute. Id.  With respect to the "fit" prong, the expert must "apply his experience reliably to the facts; his opinions must be well-reasoned, grounded in his experience, and not speculative." Sargent v. Commw. of Pa., No. 13-730, 2015 WL 6447742, at *1 (M.D. Pa. Oct. 26, 2015) (quoting Roberson v. City of Philadelphia, No. 99-3574, 2001 WL 210294, at *4 (E.D. Pa. Mar. 1, 2001)). Courts have held that the standard for analyzing "fit" is "not that high" although it is "higher than bare relevance." Premier Comp. Sols. LLC v. UPMC, No. 15-703, 2019 WL 480480, at *3 (W.D. Pa. Feb. 7, 2019) (citing Paoli II, 35

F.3d at 745). Nonetheless, a court must "examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999).

Here, the issue of whether the Wilkinson report meets the "fit" requirement is disputed by the parties.   Plaintiff does not specifically address the issue of "fit" in its motion or initial brief and only briefly addresses the issue in its reply brief. ECF No. 183. The gist of Plaintiff's three sentence reference to the requirement of "fit" is that: (1)Wilkinson's report would not be helpful to or would confuse a jury; (2) the report presents legal analysis that is impermissible for an expert to present to the jury; and (3) the report is a skewed, argumentative commentary on disputed facts. Id. at 2.

In the Response in Opposition, Defendants contend that Wilkinson's opinions meet the "fit" requirement because his opinions are sufficiently tied to the facts and thus will aid the jury in resolving this factually intensive dispute. ECF No. 175 at 7.  Defendants point out that this case involves an action for alleged fraud based on affirmative, intentional misrepresentations that Defendants allegedly made to a non-client adverse party in an oil and gas transaction. Defendants note that Plaintiff makes these allegations even though it acknowledges that its principals never spoke with the Defendants throughout the negotiation and consummation of the transactions at issue. They point out that negligence and/or standard of care concepts are not at issue here. As such, it is important for a jury of laypersons to understand a lawyer's role and conduct vis-a-vis a non-client adverse party in a commercial oil and gas transaction and that a lawyers' duties and obligations to their client are different than those owed to a non-client adverse party. Id. at 7-8. Defendants cite to examples of Wilkinson's proffered opinions on Defendants' role in the Swamp Angel transaction that will assist the jury in understanding these issues. Id.

- Mr. Wilkinson opines regarding an attorney's role and conduct vis-a-vis a nonclient, adverse party in a commercial oil and gas transaction and the need for an affirmative, intentional misrepresentation in order to establish fraud in this context (which does not exist under the facts of this case). ECF No. 163 at 28.

- Mr. Wilkinson opines that attorneys for a client in a commercial oil and gas transaction do not warrant or guarantee their client's representations in the transaction agreement to a non-client adverse party like Prime Energy and, further, that "some courts have reasoned that a lawyer cannot owe a [disclosure] duty to the nonclient because recognition of such a duty would put the lawyer in a conflict with her client's interests." (citing ABA/BNA Lawyers' Manual on Professional Conduct, 301:601 Liability to Nonclients). Id. at 30.

- Mr. Wilkinson discusses the strict privity requirements in Pennsylvania in order for a duty of care to extend to a party and opines that no such privity existed between Defendants and Prime Energy, a non-client, adverse party to Defendants' client in an oil and gas transaction. Id. at 31.

- Mr. Wilkerson opines that under the facts of the case, Defendants did not undertake a duty of care to Prime Energy, a non-client, adverse party in the transaction, and did not assume the role of a fiduciary. Rather, Defendants only assumed a duty of care to their client in the transaction. Id. at 33.

- Mr. Wilkinson opines that the Pennsylvania Rules of Professional Conduct cannot be used as evidence of alleged negligence nor support an allegation of fraud by a non-client, adverse party. Id. at 34.

ECF No. 175 at 8-9. Defendants therefore argue that much of the proposed testimony will aid the ultimate trier of fact.

The Third Circuit has explained that an expert may not testify as to the governing law of the case, and may not provide a "legal opinion" as to a party's compliance with the law because such testimony "would usurp the District Court's pivotal role in explaining the law to the jury." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006) (citing First Nat'l State Bank v. Reliance Elec. Co., 668 F.2d 725, 731 (3d Cir. 1981) (per curiam)).

With particular relevance to this case, "the line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties."

Id. at 218. Thus, the Third Circuit found the district court in First National did not err when it "permitted an expert on the Uniform Commercial Code to testify as to the established custom in the banking industry and to provide background information to help the jury determine whether the bank's conduct warranted status akin to a holder in due course." Berckeley, at 218 (citing First National, 668 F.2d at 731). But the exclusion of the expert's legal opinions about the legal duties arising from the industry custom at issue was proper. And, in the case before it, the Third Circuit held that an experienced former counsel for the SEC with expertise in offshore securities transactions would be permitted to testify about the customs and business practices in the securities industry at the time the parties entered into an allegedly fraudulent agreement. The proffered testimony would "aid the jury" in determining whether a seller of securities "had the requisite scienter" to commit fraud. Id. However, testimony regarding the legal effect of regulations and the expert's opinion as to whether the seller's belief in the legality of his conduct was reasonable was not admissible because it required a conclusion as to legal duties arising under securities law.

Here, among other claims, Plaintiff alleges fraud. To sustain this claim, Plaintiff must prove: (1) a misrepresentation or a concealment; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false or calculated to deceive (for a concealment); (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation, and (6) a resulting injury proximately caused by the reliance. Gibbs v. Ernst, 647 A.2d 882, 889 & n.12 (Pa. 1994). In defense of this claim, Wilkinson's opinions regarding customs and practices of attorneys and law firms representing parties engaged in commercial oil and gas transactions is admissible. Upon review, such testimony will aid the trier of fact in understanding the attorney's role and conduct vis-à-vis a non-client adverse party in a commercial oil and gas transaction, and the propriety of Plaintiff's purported

11

reliance on any allegedly false affirmative representations or communications. Similarly, to the extent Plaintiff asserts a breach of fiduciary obligations or negligent supervision, Wilkinson's opinions as to industry customs and practices is relevant and will aid the jury. The Court cautions that legal opinions as to legal duties arising under applicable law are not permitted. Thus, the Court finds that subject to this limitation, the opinions in Wilkinson's Report, ECF No. 163, are relevant and will assist the jury. Therefore, the Wilkinson report meets the "fit" requirement. Wilkinson will be permitted to testify as an expert at time of trial.

### 3.  Other arguments to preclude Wilkinson report

To the extent that Plaintiff's other objections to the Wilkinson report are not addressed by the above-noted Daubert analysis, the Court finds that the objections are simply as to the form of the report and are resolved as stated above.

### 4.  Oral argument

The decision to hold a Daubert hearing is discretionary with the Court and is not necessary when "the facts upon which the court must make its determination have been adequately presented to the court in the parties' papers and accompanying exhibits." Parkinson v. Guidant Corp., 315 F. Supp. 2d 754, 756 n. 1 (W.D. Pa. 2004) (citing Paoli II, 35 F.3d at 749). Based on the Court's review of Wilkinson's report and the parties' submissions, which the Court finds are sufficient to render a determination, a Daubert hearing is not warranted in this case.

### B.  Motion to Compel Production of "Defendants' Motion for Summary Judgment and Fact Statement"

In the instant motion, Plaintiff also seeks to have the Court order the production of "summary judgment" documents considered by Wilkinson. ECF No. 173. Specifically, Plaintiff points to Item No. 13, "Defendants' Motion for Summary Judgment and Statement of Facts," that is identified in the list of "Document Reviewed" in the Wilkinson report.   ECF No. 174 at 2-3.

Plaintiff argues that documents considered by an expert must be produced to the other side. Plaintiff supports its Motion to Order Production with copies of an email to defense counsel demanding production of Item No. 13, as well as the email response from defense counsel stating that "Number 13 is a draft statement of facts.  It is attorney work product." Id. at 3.   Plaintiff argues that there is no work product privilege for a statement of facts and Defendants have waived work product protection to the extent that part of the motion for summary judgment is now published in the public record in the Wilkinson report. Id. at 10.[4, 5]

Defendants oppose the request for production of the "Draft Statement of Facts" because it is attorney work product. ECF No. 175 at 11-14. Defendants argue that Plaintiff is not entitled to the production of any documents that contain defense counsel's mental impressions, conclusions, legal theories, or opinions of this case. Defendants state that Item No. 13, identified on page three of Wilkinson's expert report, is a draft statement of facts written in anticipation of a motion for summary judgment of the Defendants. They assert that the draft statement of facts contains counsel's "mental impressions of the factual record" and is therefore confidential attorney work product protected from disclosure. Id. at 13.

Defendants correctly reference the general rule that provides, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Courts "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

---

[4] In the Brief in Support, Plaintiff fails to cite any cases directly on point in support of this argument. ECF No. 174.

[5] The deadline for the filing of motions for summary judgment is September 23, 2022. ECF No. 194. As such, motions for summary judgment have not yet been filed in this action.

In <u>Krisa v. Equitable Life Assur. Soc.</u>, 196 F.R.D. 254 (M.D. Pa. 2000), the United States District Court for the Middle District of Pennsylvania recognized that the protections from disclosure afforded to core attorney work product apply when an attorney shares certain documents and information with a testifying expert. The district court referenced the holding of the United States Court of Appeals for the Third Circuit in <u>Bogosian v. Gulf Oil Corp.</u>, 738 F.2d 587 (3d Cir. 1984).

> Our Court of Appeals addressed this issue in <u>Bogosian</u>, 738 F.2d at 595, and held that core work product generated by an attorney was shielded from discovery even if disclosed to an expert. <u>Bogosian</u>, relying on the Supreme Court's rationale for constructing the work product privilege in <u>Hickman and Upjohn Co. v. United States</u>, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981), concluded that documents containing an attorney's "mental impressions, opinions or conclusions" should be protected. <u>Id.</u> Our Court of Appeals, citing <u>Upjohn</u>, noted that "[t]he particular protection to be accorded such work product, denominated 'opinion work product,' was reiterated in <u>Upjohn Co.</u> Justice Rehnquist, writing for a unanimous Court, stressed the 'special protection to work product revealing the attorney's mental processes.' <u>Id.</u> at 400, 101 S.Ct. 677." <u>Bogosian</u>, 738 F.2d at 593.

<u>Id.</u> at 258.

In <u>Pritchard v. Dow Agro Sciences</u>, 263 F.R.D. 277 (W.D. Pa. 2009), United States District Judge Nora Barry Fischer conducted a thorough analysis of the interplay between <u>Bogosian</u> and the 1993 amendments to the Federal Rules of Civil Procedure regarding production of attorney communications with experts. In particular, she examined the Advisory Committee Notes to Rule 26(b)(2)(B)(requiring production of all data and information furnished by counsel and considered by the expert), and Rule 26(b)(3) (protecting from discovery documents prepared in anticipation of litigation or for trial).

> As currently drafted, Rule 26(b)(2)(B) requires the production of a written report of a testifying expert and sets forth the requirements of the written report, including that the report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," "the data or other information considered by the witness in forming them" and "any exhibits that will be used to

14

summarize or support them." FED.R.CIV.P. 26(b)(2)(B)(I)-(iii). In reference to this Rule, the 1993 Advisory Committee Notes explain that:

> The report is to disclose the *data and other information considered by the expert* and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that *materials furnished to their experts to be used in forming their opinions*—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

FED.R.CIV.P. 26, 1993 Advisory Committee Notes (emphases added). The attorney work product doctrine is codified at Rule 26(b)(3), which provides:

> (3) Trial Preparation: Materials.

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

> > (i)     they are otherwise discoverable under Rule 26(b)(1); and
> > (ii)    the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

FED.R.CIV.P. 26(b)(3).

Pritchard, 263 F.R.D. at 291. Citing In re Teleglobe Communications Corp., 392 B.R. 561, 575 (Bkrtcy. D. Del. 2008), and In re: Cendant Corp. Sec. Litig., 343 F.3d 658 (3d Cir. 2003), Judge Fischer determined that a reasonable interpretation of the 1993 Advisory Committee Notes, when read in conjunction with the expert disclosure requirements codified at Rule 26(b)(2), requires

"only factual data and information must be produced, not the legal theories or other attorney work

product." Pritchard, 263 F.R.D. at 292.

> [G]iven the decisions by the Court of Appeals in Bogosian and later in In re
> Cendant, which are binding on this Court, as well as the language of Rule 26, the
> Court finds that the 1993 Amendments to Rule 26 did not alter the central holding
> in Bogosian that opinion work product produced to a testifying expert is protected
> by Rule 26(b)(3). As the Court of Appeals noted in Bogosian, "[e]ven if
> examination into the lawyer's role is permissible ... the marginal value in the
> revelation on cross-examination that the expert's view may have originated with an
> attorney's opinion or theory does not warrant overriding the strong policy against
> disclosure of documents consisting of core attorney's work product." Bogosian v.
> Gulf Oil Corp., 738 F.2d at 595 (3d Cir.1984). Our Court of Appeals has yet to
> abrogate this holding, and cited Bogosian with approval in In re Cendant. This
> Court declines the invitation to do so at this time.

Id. at 293.

Based on this analysis, the district court in Pritchard held that defendant was not entitled

to wholesale discovery of the communications between plaintiff's counsel and the testifying expert

witness and, as such, denied defendant's motion to compel. Id.

Rule 26 was further amended in 2010. Relevant to the current issue before this Court,

Federal Rule of Civil Procedure 26(b)(4)(C) now provides:

> (C) Trial-Preparation Protection for Communications Between a Party's Attorney
> and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between
> the party's attorney and any witness required to provide a report under Rule
> 26(a)(2)(B), regardless of the form of the communications, except to the extent that
> the communications:
>
> > (i)    relate to compensation for the expert's study or testimony;
> >
> > (ii)   identify facts or data that the party's attorney provided and
> >        that the expert considered in forming the opinions to be
> >        expressed; or
> >
> > (iii)  identify assumptions that the party's attorney provided and
> >        that the expert relied on in forming the opinions to be
> >        expressed.

16

Fed. R. Civ. P. 26 (b)(4)(C).

> The Advisory Committee Notes to Rule 26 state, in pertinent part:
>
> Although attorney-expert communications are generally protected by Rule 26(b)(4)(C), the protection does not apply to the extent the lawyer and the expert communicate about matters that fall within three exceptions. But the discovery authorized by the exceptions does not extend beyond those specific topics. Lawyer-expert communications may cover many topics and, even when the excepted topics are included among those involved in a given communication, the protection applies to all other aspects of the communication beyond the excepted topics….
>
> Second, under Rule 26(b)(4)(C)(ii) discovery is permitted *to identify facts or data the party's attorney provided to the expert and that the expert considered in forming the opinions to be expressed.* The exception applies only to communications "identifying" the facts or data provided by counsel; further communications about the potential relevance of the facts or data are protected.
>
> Third, under Rule 26(b)(4)(C)(iii) discovery regarding attorney-expert communications is permitted to identify any assumptions that counsel provided to the expert and that the expert relied upon in forming the opinions to be expressed. For example, the party's attorney may tell the expert to assume the truth of certain testimony or evidence, or the correctness of another expert's conclusions. This exception is limited to those assumptions that the expert actually did rely on in forming the opinions to be expressed. More general attorney-expert discussions about hypotheticals, or exploring possibilities based on hypothetical facts, are outside this exception.

Fed. R. Civ. P. 26 Advisory Committee Notes (2010) (emphasis added).

Courts have also noted that the line between facts and data and opinions or "core" work product can be blurred at times and that an *in camera* review is often the appropriate and necessary way to address and properly protect the rights of all parties as to expert material that is asserted to be privileged. In re Tri Harbor Holdings Corp., 19-13448, 2022 WL 659514, at *7 (Bkrtcy. D.N.J. Mar. 4, 2022) (*in camera* review conducted of unredacted version of notes at issue.); Bogosian, 738 F.2d at 595 (*in camera* review needed so that a party cannot shield facts from disclosure by combining them with work product). See also Damgaard v. Avera Health, 2015 WL 4993701, at *3-*5 (D. Minn. June 18, 2015), *aff'd,* 2015 WL 12828121 (D. Minn. July 20, 2015) (the court

directed *in camera* review of documents subject to dispute about whether they were "core work product"); Carroll Co. v. Sherwin-Williams Co., No. WMN 11-1700, 2012 WL 4846167, at *4-5 (D. Md. Oct. 10, 2012) (the court, after upholding defendant's claim of work product privilege based on review of privilege log, offered *in camera* review of the documents if plaintiff were dissatisfied with the court's ruling); Picken v. Louisville Ladder Inc., No. 11-13044, 2013 WL 12182395, at *2-3 (E.D. Mich. Sept. 26, 2013) (after *in camera* review, court determined that communications between counsel and his experts "involve core opinion work product that is not subject to disclosure").

In this case, the Court ordered Defendants to produce for *in camera* review Item No. 13 in the "Materials Received" section of Wilkinson's report. ECF No. 203. The document titled "Brief in Support of Motion for Summary Judgment" was provided to the Court on August 19, 2022. Upon *in camera* review and application of the principles identified above, the Court finds that nearly the entire document is, as described by Defendants, a draft statement of the underlying facts of in this case – apparently in anticipation of the upcoming summary judgment filings. ECF No. 175 at 12.  There are only two sentences that can be described as attorney mental impressions or thought processes. Therefore, pursuant to Federal Rule of Civil Procedure 26(b)(4)(C), beyond two sentences, the document does not contain the mental impressions of counsel and, as such, is a not confidential attorney work product protected from disclosure.[6] Accordingly, Plaintiff is entitled to the production of the "Brief in Support of Motion for Summary Judgment," minus the two redactions.

---

[6] The Court notes that Plaintiff did not notice the deposition of Wilkinson on or before February 28, 2022, the deadline set by Judge Kane for the completion of all expert depositions. ECF No. 156. Accordingly, if Plaintiff wishes to cross-examine Wilkinson on the factual statements set forth in the document and Defendants' yet to be filed motion for summary judgment, it will have the opportunity to do so at trial.

## IV.    CONCLUSION

For the foregoing reasons, Prime Energy's "Motion to Preclude Testimony and Opinion of Defendant's Expert Robert Wilkinson and Order Production of Item 13 Considered in the Report" is granted in part and denied in part.  Accordingly, the following Order is entered:

## <u>ORDER</u>

AND NOW, this 1st day of September, 2022, upon consideration of Prime Energy's "Motion to Preclude Proffered Expert Report and Testimony of Defendant's Expert Robert Wilkinson and to Order Production of 'Summary Judgment' Documents," and the briefs and exhibits filed in support and in opposition thereto, as well as *in camera* review of the identified document, IT IS HEREBY ORDERED that the motion is granted in part and denied in part as set forth in the accompanying Opinion.

IT IS FURTHER ORDERED that Defendants are to produce the identified document on or before September 15, 2022, with the redaction of the highlighted sentence on page 4 and the highlighted sentence on page 25 (under iii. Pending litigation/DEP).

BY THE COURT,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:    All counsel of record by Notice of Electronic Filing