IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERESSA LAFOLLETTE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 22-477 |
| ) | Magistrate Judge Maureen P. Kelly |
| v. ) | |
| ) | Re: ECF No. 8 |
| JEFFERSON REGIONAL MEDICAL ) | |
| CENTER *doing business as* ) | |
| JEFFERSON HOSPITAL, and ALLEGHENY ) | |
| HEALTH NETWORK ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Teressa LaFollette ("LaFollette") brings this employment discrimination case against her former employers Jefferson Regional Medical Center d/b/a Jefferson Hospital ("Jefferson") and Allegheny Health Network ("AHN") (collectively, "Defendants"). LaFollette alleges that in the course of her employment as a registered nurse at Jefferson, she suffered persistent harassment and disparate treatment because of her age, her son's sexual orientation, and the race of her sister's children. In retaliation for her complaints, LaFollette alleges that she was unlawfully terminated. As a result, LaFollette brings claims for age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.* (Count I); discrimination on the basis of race and sexual orientation and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-1 *et seq.* (Count II); and age, race, and sexual orientation discrimination and related retaliation under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* (Count III).

Pending before the Court is Defendants' Partial Motion to Dismiss and to Strike the Complaint seeking to dismiss LaFollette's race and sexual orientation discrimination and related retaliation claims for failure to exhaust administrative remedies. ECF No. 8. For the following reasons, the Partial Motion to Dismiss is denied, and the Motion to Strike is denied.[1]

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The facts relevant to the pending motion are drawn from the Complaint and accepted as true for purposes of considering the pending motion.

On February 6, 2017, LaFollette was hired as a registered nurse at Jefferson. At the time, she was 45 years old. LaFollette has an adult son who is gay and bisexual, and a sister who has biracial children. ECF No. 1-1 ¶¶ 12-16.

When she began employment, LaFollette was assigned to work in the telemetry unit at Jefferson. Most of her coworkers were in their twenties and were treated more favorably by LaFollette's immediate supervisors. Id. ¶¶ 17, 21. As an example, the telemetry unit was divided into two sections. LaFollette and another older registered nurse were assigned to one half of the unit, and were consistently assigned significantly more patients than younger nurses. Id. ¶¶ 22-24. LaFollette alleges that despite the unit's designated nurse/patient ratio of 4/1, she and her co-worker were assigned seven to ten patients each, while younger nurses may have been assigned four to five patients. Id. ¶¶ 25, 27. In addition, LaFollette was required to escort patients for testing but not provided coverage for her remaining patients. Id. ¶¶ 29-31. When she declined an escort to ensure appropriate coverage for the safety of her patients, LaFollette was disciplined with a written warning and ridiculed by her supervisor based on her age. Id. ¶¶ 32-33.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case. ECF No. 18.

Throughout her tenure, LaFollette suffered age-related disparaging remarks by her supervisor and by younger nurses in the unit, who made fun of her and questioned her competence based on her age. Id. ¶¶ 35, 40, 48, 65.

In January 2019, LaFollette's father died. Id. ¶ 41. One of her supervisors attended the wake and commented on the sexual orientation of LaFollette's son and saw her biracial relatives. Id. ¶ 43. Following the funeral, her supervisor and other younger nurses on the telemetry unit belittled LaFollette's gay son and biracial family and, along with age-related insults, directed racial slurs and race-based sexual comments at LaFollette. Id. ¶¶ 44, 68. LaFollette also experienced disparate coverage assignments that she believed placed her patients at risk. Id. ¶¶ 54-55, 73-74. LaFollette lodged complaints with her supervisors, including Jefferson's nursing supervisor. Id. ¶ 46. Despite LaFollette's complaints and a request for reassignment to another unit, she received no assistance. Id. ¶¶ 56-57, 60, 66, 83. Instead, on November 7, 2019, LaFollette received a final written warning related to her complaint of being sent home contrary to Jefferson's staffing policy. Id. ¶¶ 77-79, 85. During a meeting with her supervisor, LaFollette stated she had grown weary of the harassment and disparate treatment. Id. ¶ 86. On November 12, 2019, LaFollette was terminated for "unresolved issues." Id. ¶ 86, 88. LaFollette was escorted from the premises while followed by her supervisor, who loudly called LaFollette "pathetic." Id. ¶ 89.

Four days before she was terminated, LaFollette submitted an Inquiry Information form with the Equal Employment Opportunity Commission ("EEOC"). Id. at 29-32. Under the caption "Adverse Action(s)," LaFollette stated that she was subject to age discrimination on "November 7, 12 2019." Id. LaFollette included additional information regarding two other nurses over the age of 40 who were subject to similar age-based discriminatory treatment. Id. at 31. In the "Supplemental Information" section of this submission, LaFollette was asked to provide "any other

information about [her] experience." Id. LaFollette provided examples of harassment and disparaging remarks. She stated, "I feel my age and my concerns are being called names was an age discrimination due to the circumstances. Darlene, RN is also an older nurse and this is just one instance where I was made fun of because my age, my family being black, and my family members being gay." Id. at 32.

On April 16, 2020, LaFollette filed a Charge of Discrimination against Defendant AHN with the EEOC (the "EEOC Charge").[2] In the EEOC Charge, LaFollette identified only discrimination based on age and retaliation. Id. ¶ 93; see also ECF No. 8-1 at 2-3. To that end, in the "particulars" section of her charge, she included facts related only to allegations of age-based harassment, termination, and retaliation, and cited only the ADEA as the basis of her claims. ECF No. 8-1 at 2-3.

After filing the EEOC Charge, and in response to Jefferson's Position Statement submitted to the EEOC, LaFollette's counsel submitted a letter to the EEOC that summarized her age-based discrimination claim and set forth several examples of name-calling and disparate treatment based on age ("calling her an 'old, stupid nurse'"). ECF No. 1-1 at 34-38. LaFollette's counsel cited several examples of harassing statements made by co-workers related to LaFollette's gay son, the multiracial status of her family members, and sexual comments based on race. Id. at 34-37. These comments included asking LaFollette several times if she owned a "black dildo." Id. at 35.

On May 19, 2021, the EEOC issued the right-to-sue notice. Thereafter, LaFollette initiated legal action. The case was initially filed in the Court of Common Plea of Allegheny County and removed to this Court on March 21, 2022. ECF No. 1.

---

[2] LaFollette cross-filed her charge with the Pennsylvania Human Relations Commission. ECF No. 1-1 ¶ 96; ECF No. 8-1 at 2.

Defendants filed the pending Partial Motion to Dismiss seeking dismissal of Count II and portions of Count III of the Complaint. ECF No. 8. LaFollette has filed her Response in Opposition, ECF No. 15, and Defendants have filed a Reply, ECF No. 16.

The motion is now ripe for consideration.

## II. STANDARD OF REVIEW

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." "[D]etailed pleading is not generally required." Connelly v. Lane Const. Corp., 809 F.3d 780, 786 (3d Cir. 2016). Rather, the rules require "'only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotations omitted). Thus, to survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).

In assessing the sufficiency of a complaint, the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See Cal. Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where the factual content does not

allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678; see also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels and conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice. The complaint therefore "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim."). Id. at 233, 234.

In deciding a Rule 12(b)(6) motion, a court generally considers only the allegations contained in the complaint and the exhibits attached to it. In addition, a court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). As relevant here, courts may review an EEOC charge and proceedings when considering a motion to dismiss a claim for failure to exhaust administrative remedies. See Ruddy v. U.S. Postal Serv., 455 F. App'x 279, 283 (3d Cir. 2011) (citing Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)); Twillie v. Erie Sch. Dist., 575 F. App'x 28, 31 (3d Cir. 2014) (affirming dismissal of claims not included in EEOC charge). Thus, the Court has considered the portions of the EEOC record attached to LaFollette's Complaint, as well as the EEOC Charge.

### III.   DISCUSSION

To bring a claim under Title VII or the PHRA, a plaintiff must file a charge of discrimination with the EEOC/PHRC and procure a notice of the right to sue. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 163 (3d Cir. 2013) (citing Robinson v. Dalton, 107 F.3d 1018,

1020-21 (3d Cir. 1997); Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n. 6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims."). Upon issuance of the notice of the right to sue, "'[t]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the [EEOC].'" Mandel, 706 F.3d at 163 (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398–99 (3d Cir. 1976)). While a charge may be liberally construed, a plaintiff's claim must thus fall "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996). "If [it is] not, the claim is barred." Hines v. Vulcan Tools Co., 813 F. App'x 754, 757 (3d Cir. 2020) (citing Webb v. City of Philadelphia, 562 F.3d 256, 263 (3d Cir. 2009)).

> As explained in Simko v. United States Steel Corp., 992 F.3d 198 (3d Cir. 2021),
>
> These pre-suit requirements ... are "essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976); see also Anjelino v. New York Times Co., 200 F.3d 73, 94 (3d Cir. 1999) ("[T]he purpose of the filing requirement is to enable the EEOC to investigate and, if cause is found, to attempt to use informal means to reach a settlement of the dispute."). The Supreme Court has also emphasized that a fundamental aim of the pre-suit requirements is to "give prompt notice to the employer" and "encourage the prompt processing of all charges of employment discrimination." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 121, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (internal quotation marks omitted).

Id. at 206-07.

In the pending Partial Motion to Dismiss, Defendants argue that LaFollette's race and sex-based claims should be dismissed because she failed to include either claim in the EEOC Charge that formed the basis of agency action on her behalf. Thus, Defendants assert LaFollette failed to

exhaust her administrative remedies and cannot maintain her Title VII and PHRA claims. ECF No. 8.

In her Response in Opposition, LaFollette does not dispute that she did not "check the box" for race or sex discrimination in her EEOC Charge or refer to race or sex discrimination in the narrative section of the EEOC Charge. Nonetheless, she contends this does not bar her claims because under Third Circuit precedent, the scope of a Title VII or PHRA complaint is not limited to the four corners of the EEOC charge document. Rather, claims that are closely related to and encompassed by conduct alleged in the charge are not subject to dismissal for failing to satisfy exhaustion requirements. ECF No. 15 at 12-13 (citing, *inter alia*, Hicks v. ABT Assoc., Inc., 572 F.2d 960, 963 (3d Cir. 1978), Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)). To that end, LaFollette contends that allegations in her Complaint related to derogatory comments related to her gay son and biracial relatives arise from the same pattern of harassment she experienced regarding her age, involve the same individuals, the same department and supervisors, and occurred in the same timeframe. Thus, she argues, the EEOC investigation would have fairly encompassed her allegations of race and sex discrimination and she has satisfied the exhaustion requirement for her race and sex discrimination claims.

In considering whether LaFollette failed to exhaust her administrative remedies for her race and sex discrimination claims because she failed to check the race and sex boxes on the EEOC Charge, the Court notes that the United States Court of Appeals for the Third Circuit has recognized that when the EEOC provides a complainant with a right-to-sue notice, the ensuing private action is limited to claims that are within the scope of the initial administrative charge. Antol v. Perry, 82 F.3d at 1296. "[T]he scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out

of the charge of discrimination.'" Hicks, 572 F.2d at 966 (citation omitted). "[T]his standard does not necessarily preclude a plaintiff from asserting a claim for the mere failure to check a box on an EEOC Charge Form," Barzanty v. Verizon of Pa., Inc., 361 F. App'x. 411, 414 (3d Cir. 2010), while at the same time it prevents a plaintiff from "greatly expand[ing] an investigation simply by alleging new and different facts" once she brings a private action. Hicks, 572 F.2d at 966.

Courts may consider a plaintiff's EEOC Intake Questionnaire and the EEOC Charge in deciding a motion to dismiss. Browm v. Envoy Air, Inc., Civ. No. 14-383, 2014 WL 6682540, at *2 (E.D. Pa. Nov. 25, 2014). See Twillie v. Erie Sch. Dist., 2013 WL 4666072, n. 3 (explaining "[t]he Court may properly consider documents from administrative proceedings before the EEOC in considering a motion to dismiss federal claims of employment discrimination; Buck v. Hampton Twp. School Dist., 452 F.3d 256, 260 – 61 (3d Cir. 2006) (reviewing two EEOC intake questionnaires and the plaintiff's formal EEOC charge in evaluating the defendant's motion to dismiss); see also Ruddy, 455 F. App'x at 283 & n.5 (noting that the district court, in considering the defendant's motion to dismiss for, *inter alia*, failure to exhaust administrative remedies, "properly relied on [the plaintiff's] EEOC file, which [the plaintiff] referenced in his complaint and which is integral to his claim.").

In the instant case, the query for the Court is whether the scope of the EEOC investigation which could reasonably be expected to grow out of LaFollette's EEOC Charge would have included an investigation of discrimination against LaFollette on the basis of race and sex, together with the investigation of discrimination on the basis of her age.

To decide this, the Court looks to the initial Inquiry Information form that LaFollette provided to the EEOC. ECF No. 1-1 at 29-32. Under "Reason for Claim," LaFollette reported that she experienced age discrimination and retaliation. Id. at 29. Under "Adverse Action(s)," she also

9

reported age discrimination. However, in response to a request that the complainant "tell us any other information about your experience," LaFollette set out instances of discrimination and harassment based on "my family being black and my family members being gay." Id. at 32. Further, in her Response to Jefferson's Position Statement relative to the EEOC Charge, LaFollette explained the harassment and targeted conduct that she endured at Jefferson because her son is bisexual and her family is multiracial. Id. at 35. She reported that she was subjected to comments, on an almost daily basis, about her age, her son's sexual preference, and her family being biracial. Id. Also, on several occasions, she was asked by her co-workers if she owned a "black dildo." Id.

While Defendants are correct that LaFollette checked only the "age" and "retaliation" boxes on the EEOC Charge form, the descriptions of discriminatory conduct contained in the initial Inquiry Information form submitted by LaFollette and in her response to Defendants' Position Statement contain allegations of race and gender discrimination and hostile work environment. The details included in these documents are sufficient to reasonably conclude that the scope of the EEOC investigation would have covered race and sex discrimination.

Furthermore, it is not disputed that there is a "clear nexus" of supporting facts between LaFollette's age, race, and sexual harassment, discrimination, and retaliation claims. The claims arise out of the same facts, same hospital unit at Jefferson, same abusive work environment, caused by the same co-workers whose conduct was reported to the same managers and resulted in the same adverse employment actions. These facts clearly constitute a common "core grievance." As a result, the EEOC could have hardly investigated LaFollette's allegations of age-based conduct without also investigating the race and sex related conduct. Therefore, the Court cannot foreclose the likelihood that the EEOC investigation addressed LaFollette's allegations of race and sex discrimination that are clearly intertwined with her age and retaliation claims. For these reasons,

at this early stage of the litigation, the Court finds that LaFollette did not fail to exhaust her administrative remedies for race and sex discrimination. Accordingly, the Partial Motion to Dismiss is denied.

Defendants' Motion to Strike seeks to strike all allegations of race or sex discrimination in the event the Court grants the Partial Motion to Dismiss. In light to the disposition of the Partial Motion to Dismiss, the Motion to Strike is properly denied.

## IV. CONCLUSION

For the foregoing reasons, the Partial Motion to Dismiss and the Motion to Strike, ECF No. 8, is denied. An appropriate Order follows.

## ORDER

AND NOW, this 1st day of September, 2022, upon consideration of the Partial Motion to Dismiss and to Strike the Complaint filed on behalf of Defendants Jefferson Regional Medical Center d/b/a Jefferson Hospital and Allegheny Health Network, ECF No. 8, and the briefs filed in support and in opposition thereto, ECF Nos. 9, 15, and 16, and for the reasons set forth in the accompanying Memorandum Opinion, IT IS HEREBY ORDERED that the Partial Motion to Dismiss is denied.

BY THE COURT:

*Maureen P. Kelly*

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:   All counsel of record via EM/ECF